[Criminal No. 518.    Filed March 16, 1922.]

[204 Pac. 1032.]

## JOE B. CLARK, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW — MOTION FOR NEW TRIAL FOR MISCONDUCT OF COUNTY ATTORNEY ADDRESSED TO COURT'S DISCRETION.—A motion for a new trial on the ground that the county attorney continued his attempt to introduce incompetent testimony contrary to the court's order was addressed largely to the court's discretion.

2. CRIMINAL LAW—DENIAL OF NEW TRIAL FOR MISCONDUCT OF PROSECUTING ATTORNEY NOT DISTURBED, IN ABSENCE OF SHOWING OF PREJUDICE.—Denial of motion for new trial on the ground that county attorney continued his attempt to introduce incompetent testimony contrary to the court's order, being a matter of discretion, will not be disturbed, in the absence of clear showing that defendant was prejudiced.

3. CRIMINAL LAW—TESTIMONY THAT DEFENDANT HAD SIGNED FICTI-
TIOUS NAMES TO APPLICATIONS FOR LICENSE PLATES ADMISSIBLE
IN PROSECUTION FOR AUTOMOBILE THEFT.—In prosecution for theft
of automobile, in which it was claimed that the defendant was in
the business of stealing automobiles, testimony that applications
for license plates bearing fictitious names for fictitious cars were
signed by defendant *held* admissible to show defendant's system,
scheme, or plan.

4. CRIMINAL LAW—EVIDENCE HELD NOT TO REQUIRE INSTRUCTION TO
ACQUIT DEFENDANT IN CASE OF A REASONABLE DOUBT AS TO
WHETHER DEFENDANT OR SOME OTHER PERSON COMMITTED THE
CRIME.—In prosecution for automobile theft, instruction to acquit
if jury had a reasonable doubt as to whether defendant or some
other person was guilty was unnecessary, where there was no evi-
dence that any person other than the defendant committed the
crime.

5. CRIMINAL LAW—PRISONS—SENTENCE OF NOT LESS THAN NINE NOR
MORE THAN TEN YEARS FOR GRAND LARCENY HELD VALID—
CREDITS ARE DEDUCTED FROM MAXIMUM SENTENCE, AND MAY RE-
DUCE MINIMUM SENTENCE.—Under Penal Code of 1913, section
486, making grand larceny punishable by not less than one year
nor more than ten years in the state prison, and under section
1127, empowering the court to sentence for an indeterminate term,
the court did not err in sentencing defendant, convicted of grand
larceny, to not less than nine and not more than ten years, not-
withstanding section 1448, providing for a deduction from sentence
for good behavior, since credits for good behavior under such stat-
ute are deducted from the maximum sentence, and may entitle a
defendant to his liberty though he has not served the minimum
sentence.

6. PARDON—CONVICT SERVING INDETERMINATE SENTENCE NOT PER-
MITTED TO APPLY FOR PARDON OR ABSOLUTE DISCHARGE UNTIL
AFTER EXPIRATION OF MINIMUM TERM.—Under Penal Code of
1913, section 1450, a convict serving an indeterminate sentence is
not permitted to file an application for a pardon nor absolute dis-
charge until his minimum term has expired.

APPEAL from a judgment of the Superior Court
of the County of Maricopa. R. C. Stanford, Judge.
Affirmed.

Mr. Thomas J. Croaff, for Appellant.

Mr. W. J. Galbraith, Attorney General, and Mr.
R. E. L. Shepherd, County Attorney, for the State.

ROSS, C. J.—Appellant was convicted of stealing a Ford automobile belonging to the Egyptian Cotton Company, and sentenced to serve not less than nine years and not more than ten years in the penitentiary at Florence.

He relates in his statement of facts that about the time he was arrested police officers of Phoenix, without a search-warrant, searched his room, finding certain "articles" therein which, upon his application before trial, were by the superior court ordered restored to him, and the county attorney restrained from using, or attempting to use, said "articles" in evidence, or to use any knowledge gained by such seizure.

The first assignment is that the court erred in not granting appellant a new trial for the reason the county attorney continued his attempt, contrary to the court's order, to introduce evidence so unlawfully seized. We have examined the transcript of the testimony, and it appears therefrom a colloquy, partly before the jury and partly in the absence of the jury, took place between the court, appellant's counsel, and the county attorney about some articles that were being offered by the county attorney as evidence, among which were some automobile license plates that had been taken from appellant's room by the officers. They were not permitted to go before the jury as evidence, although the county attorney did offer them. The motion for a new trial, upon the grounds stated, was addressed largely to the court's discretion. In overruling the motion the court in effect held that the county attorney did not transgress the court's order, or, if he did, that the appellant was not prejudiced thereby. Unless it clearly appeared that the appellant was prejudiced, we would not feel like disturbing the ruling of the trial court.

The machine appellant was charged with stealing was a Ford touring car, motor No. 4,318,050, bearing license plate No. 34,020. When it was found the motor number had been changed to 4,092,983 and it bore license plate No. 3925. The application upon which license No. 3925 was issued described the motor as being No. 4,092,983, and was signed by the appellant. The factory number had been filed off the engine, and the number appellant gave in his application had been placed thereon. The machine had been repainted and the top had been changed. Some changes had been made in the engine. In one place on the body of the car was painted, in yellow, "I don't oil"; another place, "Keep cool, Mr. Ford; save your power." It was the theory of the state that the appellant was in the business of stealing automobiles and the prosecution accordingly offered in evidence several applications for automobile licenses, signed with fictitious names in the handwriting of appellant. The state introduced expert testimony that the signatures to these other applications were in the handwriting of appellant; and the court permitted the expert witness to use photographs of the signatures very much enlarged to illustrate his testimony. The appellant assigns this as error, because he says this testimony had "a tendency to prejudice the minds of the jurors in the belief that defendant had been or was preparing to or had committed a number of other similar offenses." These applications for license plates did not bear appellant's name, but fictitious names, signed by appellant. They were likewise for fictitious cars, that is, there was no car in existence having the manufacturer's motor number as given in application; that discrepancy being a matter for correction after the right car was found, unprotected. If several license plates issued to appellant had been found in his possession under a search-warrant, we

think there could be no question as to their competency and relevancy as evidence, on the same principle that the tools of a burglar, found in his possession, are competent evidence upon his trial for burglarizing a house. If the plates in such circumstances would have been competent, why not the applications upon which the plates were issued? The plan was original, as well as ingenious. All the thief had to do was to separate the owner from his car, change the license plate number and the motor number, and apply a different color of paint, making the car yellow or red where it had been black or green, and the change was as complete as the mutation of Dr. Jekyll into Mr. Hyde, or *vice versa.* We think the testimony was competent to show system, scheme, or plan. *Cummings* v. *State,* 20 Ariz. 176, 178 Pac. 776.

Appellant requested the court to instruct the jury as follows:

"The court instructs you that if from the evidence, or lack of evidence, in this case you have a reasonable doubt whether this defendant or some other person known or unknown is guilty of the offense charged, you should reserve that doubt in favor of this defendant and acquit him.

"The court instructs you that if the evidence merely raises a suspicion in the minds of the jury that the defendant is guilty, it is clearly insufficient to convict him, and the jury must acquit him."

The appellant complains of the court's refusal to give these instructions, "for the reason that the court gave no other instructions covering the issues involved as to the identity of the accused." All the evidence in the case was circumstantial. The car was stolen in Phoenix. Some time thereafter it was sold to Birch & Taylor, a partnership, composed of Robert Birch and Frank E. Taylor, doing business in Prescott, Arizona, who took a bill of sale from the

seller, who signed his name thereto as Joe Clark.
Taylor and Birch were witnesses for the appellant,
and testified that he was not the man who sold them
the car and signed a bill of sale. They did state, how-
ever, that they had seen appellant in Prescott a good
many times. It is the theory of the state that appel-
lant had used some one else as a go-between in get-
ting rid of the car. The giving of the instruction
would have been proper, providing the evidence or
lack of evidence in the case pointed to someone other
than the appellant as the guilty party. The evidence
at most tended to show appellant might have had an
accomplice in the disposition of the car to Birch and
Taylor. There is nothing in nor outside of the evi-
dence that would cause doubt as to who the real
culprit was—nothing tending to show any one other
than appellant obtained the license plate borne by the
car when it was recovered, or that any other person
could have had a motive for changing the manufac-
turer's motor number to the fictitious number desig-
nated in application for license and found on engine,
other than appellant. There was nothing in the evi-
dence calling upon the jury to determine who, as be-
tween defendant and someone else, stole the car. The
facts in *Apodaca et al.* v. *State,* 21 Ariz. 273, 187 Pac.
581, wherein the refusal to give a similar instruction
was held to be error, were widely different. In that
case the defendants as witnesses detailed a state of
facts that not only tended to exculpate them, but
pointed to another as the party who committed the
crime. The facts calling for it, the instruction was
proper. The same may be said with reference to the
ruling in *People* v. *Hemple,* 4 Cal. App. 120, 87 Pac.
227, also relied upon by appellant. In the present
case appellant did not testify. He made no explana-
tion of how it happened that he should apply for a
license plate to be used on a Ford with a forged or

fictitious number on the engine, at a date approximately the same as when the Ford belonging to the Egyptian Cotton Company was stolen, or the strange coincidence of this car turning up later, bearing the license number issued to him, with the correct motor number filed out, and the motor number given in his application placed thereon. Nor was the original bill of sale given to Birch & Taylor introduced in evidence. This paper unquestionably bore appellant's name as the seller of the machine; both the purchasers so state and the certified copy so showed. The original would have gone a long way toward establishing the guilt or innocence of appellant. If it bore the genuine signature of appellant, it would have cinched the state's case. The only explanation from appellant and his witnesses was that it was lost or misplaced or could not be found. If the original bill of sale had been produced and shown not to bear appellant's genuine signature, it might not have been improper to instruct as appellant requested.

By section 486 of the Penal Code, grand larceny is punishable by not less than one year, and not more than ten years, in the state prison. The court is empowered by section 1127, Penal Code, to sentence persons convicted of a felony, except murder in the first degree, to imprisonment for an indeterminate term, and to fix the minimum and maximum thereof within the limits as prescribed as the shortest and longest terms of punishment for the offense. The appellant's imprisonment was fixed at not less than nine and not more than ten years. This punishment is permitted by sections 486 and 1127, *supra*. Appellant, however, strenuously contends that section 1127 should be read and construed in connection with section 1448 of the Penal Code. This last section has to do with the duty and powers of the board of control

over the state prison and the convicts therein. By this section it is provided, among other things, that—

Every convict for good behavior "shall be allowed from his term a deduction of two months in each of the first two years; four months in each of the next two years, and five months in each of the remaining years of his term."

Appellant says the sentence imposed will not permit such allowance, and is therefore illegal. We do not so construe it. The credit for good behavior should in all cases be deducted from the maximum sentence. But for the credits that is the sentence he would serve. Whether he serves less than the longest time fixed in sentence depends entirely upon him. If the minimum and maximum be so close together that when credits earned are deducted from the maximum the difference is less than the minimum, it simply means the convict, by his good behavior, has earned his liberty before the end of the minimum. Taking the present case, for an example, appellant, if he earns all his credits, will be entitled to forty-two months, or three and one-half years' deduction from the maximum of ten years; six and one-half years, therefore, would be the end of his term, notwithstanding the court has named nine years as the minimum. He would serve the full minimum only when he had earned no credits, or having earned credits, by his misconduct, forfeited them. The law seems to contemplate (section 1450, Pen. Code) that a convict serving an indeterminate sentence shall not be permitted to file an application for a pardon or absolute discharge until his minimum term has expired and apparently, in no other respects, does a high minimum militate against the convict.

Finding no error, the judgment of conviction is affirmed.

McALISTER and FLANIGAN, JJ., concur.