[Civil No. 2469.   Filed June 17, 1926.]

[246 Pac. 1033.]

THE STATE OF ARIZONA at the Relation of JOHN W. MURPHY, Attorney General of Said State, and R. B. SIMS, Superintendent of the Arizona State Prison, Petitioners, v. THE SUPERIOR COURT OF MARICOPA COUNTY, M. T. PHELPS, Judge of Said Court, and CLAUDE S. BERRYMAN, Clerk of Said Court, Respondents.

1. PARDON — UNDER CONSTITUTION AND STATUTE, GOVERNOR HAS NO AUTHORITY TO ORDER PRISONER IN STATE PRISON RELEASED ON PAROLE UNDER ANY CIRCUMSTANCES (CONST., ART. 5, § 5; PEN. CODE 1913, §§ 1297, 1301, 1302, 1431–1466).—Under Constitution, article 5, section 5, and Penal Code of 1913, sections 1297, 1301, 1302, 1431–1466, Governor has no power to order prisoner of state prison released on parole under any circumstances.

2. PARDON.—Under Constitution, article 5, section 5, and under Penal Code of 1913, sections 1297, 1301, 1302 and 1431–1466, board of pardons and paroles cannot release prisoners from state prison on parole until they have served their full minimum sentence, where sentence is indeterminate.

3. CONTEMPT.—Court sentencing one convicted of crime to state prison can punish superintendent of state prison as for contempt for releasing prisoner before minimum sentence has been served, though such release is made in good faith, pursuant to order of Governor, recommended by board of pardons and paroles.

See (1) 29 Cyc., p. 1563, n. 18.   (2) 29 Cyc., p. 1563, n. 19.   (3) 12 C. J., p. 883, n. 98, p. 900, n. 6, 7; 13 C. J., p. 9, n. 66; 32 Cyc., p. 324, n. 93 New, 99 New.

Original proceeding for Writ of Certiorari.   Writ issued, and upon final hearing, writ quashed.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. Frank J.

1.   Constitutionality of restrictions upon Governor's pardoning power, see note in L. R. A. 1915F 519.   See, also, 20 R. C. L. 577.

Duffy, Assistant Attorneys General (Messrs. Baker & Whitney, of Counsel), for Petitioners.

Mr. Arthur T. La Prade, County Attorney, and Mr. Charles A. Carson, Jr., Deputy County Attorney (Mr. Fred C. Struckmeyer, of Counsel), for Respondents.

ROSS, J.—This is an original proceeding having for its purpose the obtaining from this court an exposition of our statutes upon the subject of paroles, and when and by whom paroles may be granted.

On December 14, 1924, in the superior court of Maricopa county, Arizona, Honorable M. T. Phelps presiding, one Jimmie Douglas, having theretofore pleaded guilty of the crime of grand larceny, was sentenced to imprisonment in the state prison at Florence, Arizona, for a term of not less than one, nor more than two, years. In August, 1925, upon the request of the superintendent of the prison, R. B. Sims, and the representations of the prison physician that Douglas' eyes were in a serious condition, needing the care and attention of an eye specialist, the board of pardons and paroles recommended to the Governor of the state that he be paroled, whereupon the Governor ordered Douglas released on honor, and he was accordingly released by the superintendent Sims. Thereupon, the superior court of Maricopa county, Honorable M. T. Phelps presiding, upon the application of the county attorney of Maricopa county, cited said superintendent for contempt. The superintendent filed as a return to such citation an answer setting forth that he had released Douglas upon the recommendation of the board of pardons and paroles and the order of the Governor. The court held the return insufficient, adjudged the superintendent guilty of contempt, and imposed a fine of fifty dollars, and committed him pending the payment of the fine.

The present proceeding in *certiorari* was thereupon instituted in this court to question the action of the trial court in punishing the superintendent for his act in releasing Douglas; the petitioners contending that the superintendent's return justified such act. The petitioners present their contentions in the form of two questions, as follows:

"First.  Has a superior judge jurisdiction over the state prison to the extent that he may control the course of the executive departments in charge of said prison by means of a summary contempt proceeding?

"Second.  Has the board of pardons and paroles the authority to recommend the parolement of a prisoner prior to the date of his minimum sentence?"

Arguing these questions, petitioners call our attention to section 5, article 5, of the state Constitution, concerning the Governor's power to grant reprieves, commutations and pardons, and the legislation (title 21, part 2, Penal Code) regulating the exercise of this power.  An examination of the legislation convinces us that, if the legislature intended to confer upon the Governor the power to grant paroles, it signally failed and omitted to say so.  The legislature, following the constitutional grant of power to the Governor over reprieves, commutations and pardons, confirms that grant with certain enumerated limitations and restrictions, but it nowhere empowers or authorizes the Governor to grant paroles.

Section 1301 of title 21, *supra,* creates a board of 'pardons and paroles, and section 1302 provides that—

"Said board shall have exclusive power to pass upon and recommend reprieves, commutations, paroles and pardons, and no reprieve, commutation, parole or pardon shall be granted by the Governor unless the same has first been recommended by said board.  All applications made for reprieves, commutations, paroles and pardons made to the Governor

shall be at once transmitted by the Governor to the chairman of the said board, and the said board shall return the same with their recommendation to the Governor.''

The forbidding the Governor to grant paroles unless recommended by the board of pardons and paroles would indicate that the legislature thought it had in some place conferred the power on that officer to grant paroles, but a careful search discloses that the grant of power, both in the Constitution and in the legislation, is limited ''to . . . reprieves, commutations, and pardons.'' Section 1297, Penal Code.

Title 21, *supra,* is headed ''Pardons and Reprieves,'' and, while it creates the board of pardons and paroles, and makes a recommendation from such board to the Governor an essential to his right to exercise the power conferred on him, it nowhere undertakes to prescribe rules and regulations for the conduct of the state prison or its inmates, or when or by whom the power to parole should be exercised.

Turning, however, to title 1, part 3, sections 1431 to 1466, Penal Code, we find legislation providing for the location of the state prison, creating the office of superintendent thereof, and providing for other officers, and employees and prescribing their duties. The pertinent sections—the ones bearing upon the questions we have to decide—are 1450, 1451 and 1452, which we quote in full:

''1450. The board of pardons and paroles shall meet at such prison, from time to time, as they shall deem necessary. At each meeting of said board held at such prison, every prisoner confined in said prison upon an indeterminate sentence, whose minimum term of sentence has expired, or any prisoner now serving a definite sentence, shall be given an opportunity to appear before such board and apply for his release upon parole, or for an absolute discharge as hereinafter provided, and said board is hereby prohibited from entertaining any other form of application or

petition for the release upon parole or absolute discharge of any prisoner; provided, that whenever a prisoner shall have appeared before the board, and his case shall have been adversely decided, the case shall not again be considered for a period of six months.

"1451. The superintendent of such prison shall cause to be kept at the state prison, a full and accurate record of each prisoner therein confined upon an indeterminate sentence as aforesaid, which record shall include a biographical sketch covering such items as may indicate the causes of the criminal character or conduct of the prisoner, and also a record of the demeanor, education, and labor of the prisoner while confined in such prison; and whenever such prisoner is transferred from one prison to another, a copy of such record or an abstract of the substance thereof, together with the certified copy of the sentence of such prisoner shall be transmitted with such prisoner to the prison to which he shall be transferred.

"1452. If it shall appear to said board of pardons and paroles, from a report by the superintendent of such prison, or upon an application by a convict for a release on parole as hereinbefore provided, that there is reasonable probability that such applicant will live and remain at liberty without violating the law, then said board may authorize the release of such applicant upon parole, and such applicant shall thereupon be allowed to go upon parole, in the legal custody and under the control of the parole clerk and superintendent of the state prison from which he is so paroled, until the expiration of the maximum term specified in his sentence, as hereinbefore provided, or until his absolute discharge as hereinbefore provided."

From these sections, there can be no question but that the power to release upon parole is exclusively vested in the board of pardons and paroles, and that the Governor of the state has nothing whatever to do with the paroling of prisoners; that it is the duty of the board of pardons and paroles to hear applications for release upon parole of any prisoner

serving an indeterminate sentence at the expiration of the minimum of his term, or of any prisoner who has been sentenced to a definite term before the law authorized the imposition of indeterminate sentences. (Since October 1, 1913, the date the present Penal Code took effect, indeterminate sentences are given in all felonies except murder. Section 1127 of the Penal Code. Prior thereto all sentences were fixed and definite.)

It also seems to us quite clear that the legislature intended to restrict and limit the power of the board of pardons and paroles to hear and determine applications for release on parole, when the prisoner was serving an indeterminate sentence, to those who had served at least the minimum of their sentences.

Petitioners contend that section 1452 provides two methods of bringing to the notice of the board of pardons and paroles an application for release on parole: (1) The report of the superintendent of the prison; and (2) an application by the prisoner, as provided in section 1450, and that, if the application is personal, the board cannot consider it until the prisoner has served the minimum time, but, if he is recommended for release by the superintendent, the board may release him before he serves the minimum.

This construction to us does not seem a reasonable one, nor fairly within the language or intent of the statute. We think section 1452 has reference to the character and sufficiency of the showing made by the applicant for a release. This showing might consist of the report of the superintendent only, or it might consist of the evidence submitted by the prisoner on a hearing of his application; but, whether the one or the other or both, if it appear therefrom that the prisoner would probably live and remain at liberty without violating the law, the board may act thereon and grant the release. Section 1452 has no reference whatever to the jurisdictional facts au-

thorizing the application or empowering the board to act thereon. Section 1450 defines these, and very definitely and plainly refuses permission to any prisoner serving an indeterminate sentence the right to apply for a release on parole until he has served the minimum of his sentence, and the board is prohibited from entertaining any other form of application or petition.

The legislature having provided for a minimum and a maximum term of sentence, it certainly accords with reason to assume that it had a purpose in so doing. If the legislature intended that the board of pardons and paroles could release a prisoner at any time after commitment to the state prison, why did it not provide for the maximum sentence only? For, if petitioners' contention is correct, there would be no reason for a minimum sentence, as it could be ignored by the board. The reason and the language of the legislation can point to but one conclusion, and that is that a prisoner sentenced to an indeterminate sentence should at all events serve the minimum thereof.

We are therefore of the opinion that the legislature has not given the power to the Governor of the state to order prisoners in the state prison released on their honor under any circumstances whatever, nor has it conferred power or jurisdiction upon the board of pardons and paroles to release prisoners from the state prison on their honor until they have served the full minimum sentence, where the sentence is indeterminate. It follows, therefore, that the prisoner Douglas was released without authority of law.

In *Clark* v. *State,* 23 Ariz. 470, 204 Pac. 1032, there was involved the validity of an indeterminate sentence, it being contended that the minimum was so excessive as to make it illegal. In the course of the opinion we stated:

"The law seems to contemplate (section 1450, Pen. Code) that a convict serving an indeterminate

sentence shall not be permitted to file an application for a pardon [parole] or absolute discharge until his minimum term has expired. . . . ''

Again, in *Laird* v. *Sims,* 16 Ariz. 521, L. R. A. 1915F 519, 147 Pac. 738, by way of argument, we said:

''The board [of pardons and paroles] is required to meet at the state prison from time to time, at which meetings all prisoners who have served the minimum sentence, when it is an indeterminate sentence, as well as those serving definite or fixed sentences, may appear and apply for a parole or an absolute discharge.''

See, also, *Howard* v. *State,* 28 Ariz. 433, 40 A. L. R. 1275, 237 Pac. 203.

Thus it will be seen that, although the exact question has not heretofore been directly involved, this court has three times heretofore indicated its views of the proper construction of section 1450.

The further question of the right and power of the court to punish the superintendent of the state prison as for contempt of court for releasing the prisoner is left for disposition. We think that question is fully answered in the decision of *Howard* v. *State, supra.* In that case the prisoner, Howard, had complained that he was, without excuse therefor, being kept in solitary confinement, and fed on bread and water, and the court, in discussing the duties and the powers of the superintendent of the state prison, and the power of the court to punish him for an abuse thereof, among other things, said:

''When, therefore, the superintendent of the prison receives the commitment, which is his only authority for detaining any man within that prison, he may only do what that commitment orders him, to wit, 'receive and safely keep' the defendant for the time specified therein. If, without legal justification, he does more than is necessary to so safely keep him, he is violating the law just as much as he is in re-

leasing him before the expiration of his minimum term of sentence unless he has been legally pardoned. . . .

"When a court of record in a civil action orders a party to do or not to do a certain thing, and its order is disobeyed, the remedy is the invocation of that inherent power existing in all such courts to punish a violation of its order as a contempt. 13 C. J. 47. We see no reason why this power does not exist as well in criminal cases. . . .

"The superintendent of the state prison is *ex officio* an officer of each superior court of the state for the purpose of carrying out its proper sentences, and is subject to attachment for contempt, if he departs therefrom. . . . "

The superintendent's duty was to observe and enforce the court's mandate, and, when he violated its terms by releasing the prisoner before the minimum sentence was served, his act was contemptuous. The order of release had no sanction in law, and was not a justification, though in following it the superintendent of the prison was undoubtedly obeying the law as he understood it, and was in no sense guilty of any intentional violation of it. He was merely following the construction placed upon it by the Governor, the board of pardons and paroles, and himself, since the policy of paroling prisoners had become a part of the statutes of the state. But the motives of the board of pardons and paroles, however beneficent and well intentioned, in ordering or recommending the prisoner's release could not supplant the plain letter of the law.

It is for the legislature to say when the power of paroling prisoners may be exercised, and it is the duty of the courts and those ministerial officers charged with executing their mandates to follow the law as it is written, and not as they may think it should be written. When the legislature, if it ever does, rewrites the law, or amends it, empowering the

board of pardons and paroles to release prisoners at their discretion, it will be time enough for them to exercise that power.

We are of the opinion the superior court of Maricopa county committed no error in citing the superintendent of the state prison for contempt and in adjudging him guilty thereof.

It follows, therefore, that the writ of *certiorari* issued herein should be quashed, and it is so ordered.

McALISTER, C. J., and LOCKWOOD, J., concur.