## No. 12,657.

PEOPLE EX REL. GRENFELL ET AL. *v.* DISTRICT COURT,
SECOND DISTRICT ET AL.

(299 Pac. 1)

Decided May 11, 1931.

Mr. Horace N. Hawkins, Mr. Horace N. Hawkins, Jr., Mr. Harold G. King, Mr. Charles T. Mahoney, Mr. Arthur R. Morrison, for petitioners.

Mr. Earl Wettengel, Mr. Charles F. Morris, for respondents.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

The exercise of the original constitutional jurisdiction of this court is sought by the people of the state of Colorado, upon the relation of the three members of the Colorado state board of corrections, the warden of the state penitentiary, the special deputy warden, and the chief

of the state law enforcement department of the state of Colorado in their petition for a writ of prohibition against the district court of the second judicial district of the state of Colorado in and for the City and County of Denver, and Honorable Henley A. Calvert, one of the judges thereof. Petitioners thereby seek to restrain the district court and the judge from exercising any further jurisdiction in a certain contempt proceeding now pending in such court, filed by the district attorney, whose object was and is to have these petitioners punished for their alleged violation of an order and judgment of said court theretofore made and entered in a criminal action, "now depending therein," whereby the defendant therein, George West, was by the court sentenced to the state penitentiary and to be there kept and confined for a period of not exceeding ten years and not less than eight years from the date of his incarceration. The contempt is said to consist in the fact that the petitioners here, in contravention of the commitment order, and in utter disregard of the same, and contrary to the laws of the state of Colorado, released and permitted the defendant to leave the state penitentiary at Canon City, Fremont county, Colorado, and to be and remain at large in the City and County of Denver, and so to remain without the walls of the state penitentiary and to live at home from May 14, 1930, to May 20 of the same year, all in utter disregard, and in defiance, of the order of the district court made and entered of record in said criminal case.

This petition to show cause was signed, but not verified, by the district attorney or by any other person. An employee of the district attorney's office filed an affidavit in the proceeding in which he says that he had investigated the report that defendant was at large in the city of Denver and permitted to live at home and not confined within the walls of the penitentiary, and found that such reports were true and that he had been released from the penitentiary upon the orders of the peti-

tioners herein. This affidavit, however, does not refer to, or purport to be a verification of, the petition of the district attorney.

If the alleged contempt is a civil constructive contempt, the code section applicable thereto requires a verification of the charging petition. If it is a criminal constructive contempt, and is instituted by the attorney general or the district attorney, verification is unnecessary. *People v. News-Times Pub. Co.,* 35 Colo. 253, 359, 374, 84 Pac. 912; *Coolidge v. People,* 72 Colo. 35, 38, 209 Pac. 504. We do not find it necessary, however, to determine whether the contempt attempted to be charged in the petition which was filed in the district court is a civil or a criminal constructive contempt. And this is so because, if it be a criminal constructive contempt, and verification by the district attorney of the charging petition is unnecessary, the district court has not jurisdiction in the contempt proceeding before it to inquire into or punish the penitentiary officers for the alleged contempt of the district court which the petition charged they had committed.

In *Wheeler v. Northern Colo. Irr. Co.,* 9 Colo. 248, 11 Pac. 103, Judge Helm announced the prevailing view on the subject of applications for the issuance of original writs, and his opinion has often been referred to with approval by this court and is now embodied in our rule 57. In *People v. District Court,* 80 Colo. 538, 253 Pac. 24, in summarizing this doctrine, we said that our jurisdiction to issue prerogative writs is not properly invoked "unless, among other things, the matter in dispute is publici juris, affects the state as a whole and in its sovereign capacity, and unless the inferior court is without jurisdiction in the premises, and always the issuance of the writ is discretionary, and not as of right."

With this and other decisions to the same effect in mind, let us see if this application comes within the requirements. It is made in the name of the people, on the relation of the members of the Colorado board of

corrections and the warden and other officers of the state penitentiary. This board, under our statutes, as they read at the times above mentioned, was invested with plenary power and control and management of the penitentiary and other state institutions, and its members were certified for appointment by the State Civil Service Commission, and the governor had no voice in their selection, but was compelled to appoint only those thus certified. He had not power to remove them and they remained in office until they died, resigned or were properly removed by the Civil Service Commission. As state officers they were amenable only to the Constitution and the statutes of the state for violation or neglect of official duty. Our statute has recently been modified in these particulars. That the matter in dispute, as above stated, is publici juris is not questioned. Indeed, concerning, as it does, the conduct and method of managing an important state institution by state officers, the state as a whole in its capacity of sovereign is directly affected. All of the essential elements necessary to invoke our jurisdiction in this application are unquestionably present, as above stated, provided the trial court is without jurisdiction to hear and determine the alleged contempt, and if the situation disclosed in the pending petition is of such grave importance as to invoke our discretionary power to afford the extraordinary relief prayed for. We have not overlooked some of our former decisions where we said that such applications should be made or instituted upon the relation of the governor of the state acting by the attorney general. But we think that requirement is not applicable here. It is matter of common knowledge, of which we take judicial notice, that the governor of the state and the attorney general in office at the time this application was made, were not in harmony with the Colorado board of corrections in its management of the affairs of the institutions under its control. It is not at all likely, in these circumstances, that the governor would have joined with the board in this appli-

cation if requested to do so, and the board, considering the situation as above stated, was justified in acting as relator without securing the consent or approval of the governor thereto.

Appropriate punishment of the petitioners here was sought in the district court for their alleged contempt of that tribunal, which consisted of the permission which they gave to a prisoner committed to the penitentiary by the Denver district court, to be at large and not confined within the walls of the penitentiary as the order of commitment of the court provided. The contempt petition charges among other things that the sentence or commitment order of the Denver district court was made in a criminal action in that court in which the prisoner committed was the defendant and that this action was still "depending" in that court.

■ ■ The district attorney apparently considered that the district court had jurisdiction to hear and determine the alleged contempt because, as he thought, the action, in which the commitment order was made, was still pending. The contempt order or sentence was entered in a criminal action in 1927 of which the district court had lost jurisdiction. It is not claimed that any writ of error has been sued out to review this final judgment of the district court. It is a matter of which we take judicial notice that the term of the court when this sentence was pronounced expired many months ago and several succeeding terms of court have been held in that judicial district. A cause is pending until it reaches a final determination either in the court of original jurisdiction or in the appellate court. *In Re Egan,* 24 S. D. 301, 123 N. W. 478, 488. *Turner v. Norris,* 35 Me. 112, 115, says that a suit is pending until final judgment is rendered therein. *Ex Parte Craig,* 274 Fed. 177, is to the same effect. Craig was sentenced by the federal district court to sixty days' imprisonment for alleged contempt which consisted of the writing and publishing of a certain letter. He was released, as the letter was not

written concerning a pending case, the judge observing: "A cause is pending when it is still open to modifications, appeal or rehearing and until the final judgment is rendered." It would seem, therefore, that there was no case pending in the district court at the time it entered the order complained of here citing the penitentiary officers to show cause, if any they had, why they should not be punished for contempt.

██ But if the criminal action was pending in the district court at that time, there is another and more convincing reason why the district court should be prohibited from proceeding further in the contempt proceeding, and that is because it has not jurisdiction of the subject matter. The theory of the district attorney, which was adopted by the district court, and only upon such theory may the penitentiary officers be held guilty of contempt, is that where one convicted of a crime is sentenced to the penitentiary and is delivered to the state officers in control by the sheriff of the court which pronounced sentence, these penitentiary officials hold the prisoners as officers or executives of the sentencing court. Two cases so holding are cited by the district attorney from the state of Arizona. The first is *Howard v. State*, 28 Ariz. 433, 237 Pac. 203, 40 A. L. R. 1275. The other is *State v. Superior Court*, 30 Ariz. 332, 246 Pac. 1033, 47 A. L. R. 401, the latter case citing *Howard v. State*, *supra*, upon this subject. The court there applied the rule applicable in civil cases to criminal cases and held that the court sentencing one convicted of a crime to a state prison can punish the superintendent of the prison for contempt for releasing the prisoner before the minimum sentence has been served. The court avowedly in these cases proceeded upon the theory that the officers of the penitentiary are officers of the court which sentences prisoners. We think the weight of authority is to the contrary. In *Ex Parte Turner*, 73 Fla. 360, 74 So. 314, the court held that custody of a prisoner who is serving under sentence of a court, is regulated by statute, and

not by judicial orders and any interference with such custody or violation of such statutory regulation is not a contempt of the court, though such interference or violation may be redressed by due course of law. We cannot sustain the jurisdiction of the district court in the contempt proceeding, unless we overrule *Roberson v. People,* 40 Colo. 119, 90 Pac. 79. We there held that the trial court which adjudged Roberson guilty of contempt of court was wrong. That was a case where the water commissioner of a water district filed an affidavit in the district court which rendered the decree establishing priorities in the water district, that Roberson interfered with him in the discharge of his official duties and asked the court to adjudge Roberson guilty of contempt upon the theory that he was an officer of the court, but this court, speaking by Mr. Justice Maxwell, said: ''The learned trial judge was in error in holding that the water commissioner was an officer of the court; he is appointed by the governor, and, to a certain extent, is under the control and direction of the irrigation division engineer and the state engineer; but there is no law which makes him an officer of the court. * * * We do not believe that interference with him in the discharge of such official duties will make the party interfering liable as for contempt of court under the above-quoted provision of the code. * * * Under the above statute, and the decisions of this court, it may be well said, that the water commissioner is a police officer of the state.''

If a water commissioner, whose duty is to distribute water for irrigation in accordance with a court decree in a civil case, is not an officer of the court rendering the decree, we do not see how the members of the board of corrections, who have control of the Colorado state penitentiary, and the warden and other officers of that institution can be said to be officers, or that they hold prisoners committed to their charge as custodian, of the court which sentences prisoners to confinement therein. As we have already said, these prison officers

are state officers. They are not custodians or officers of the court which sentences prisoners to that institution, and are not guilty of a contempt of court in violating the order of commitment. In *Hundley v. Foisy,* 150 La. 716, 91 So. 164, 21 A. L. R. 325, the court held that interference with the enforcement of judgments by the executive officers through whom judgments are enforced, or carried out, constitutes contempt in a civil case, but not in a criminal case, since in a criminal case the functions of the court cease with the final sentence, and the allegiance of the officers enforcing the judgment is not to the court, but to the law; the penalty for nonperformance of duty being removal from office or fine and imprisonment. Indeed, in the case now before us, it is alleged in the contempt petition that the act of the penitentiary officers was contrary to the statutes of the state. If this allegation is true, it does not follow, because the penitentiary officers violated state statutes regulating the custody and control of prisoners sent to the penitentiary, that they are guilty of contempt of the court imposing such sentence upon them. The weight of authority seems to be against the contentions of the district court in this case, and our own decision in the Roberson case, supra, is in line with the majority holding.

In the opinion of Chief Justice Fuller, in *United States v. Shipp,* 214 U. S. 386, 29 Sup. Ct. 637, there is an interesting and instructive discussion on the subject of contempt. We think it authority for our conclusion here that the penitentiary officers were not guilty of the contempt charged against them. In the criminal court of Hamilton county, Tennessee, one Johnson, a negro, was convicted of rape upon a white woman and sentenced to death. He filed a petition in the United States Circuit Court sitting in Tennessee for a writ of habeas corpus, alleging that in the trial he had been deprived of his constitutional rights. The writ, though granted, was afterwards quashed and Johnson was, by order of the Tennessee federal court, remanded to the county jail of

Hamilton county, there to be detained in custody for ten days in which to enable him to prosecute an appeal to the Supreme Court of the United States, which a statute of Congress authorized in such cases. The Supreme Court of the United States decided that under the pertinent act of Congress, Johnson was, in these circumstances, held as a federal prisoner and that the sheriff is accountable to the federal courts and, to the extent of his power and the means under his control, he must use due diligence and reasonable efforts to protect the prisoner from mob violence, and if, after the Supreme Court of the United States has granted an appeal, as it did in this case, the sheriff negligently fails in his duty in this behalf, he is guilty of contempt of that tribunal. An opinion of the Supreme Court, on the preliminary questions of law involved in the case, was delivered by Mr. Justice Holmes. This opinion held that whether the sheriff was to be regarded as a bailee of the United States or still held the prisoner in the name of the state alone, the order of the Supreme Court of the United States granting an appeal suspended further proceedings by the state against the prisoner and required that he be forthcoming to abide the order of the Supreme Court of the United States in the premises. In the later opinion of the Supreme Court by Chief Justice Fuller on the main questions in the case, it was held among other things, in conformity with the opinion of Mr. Justice Holmes, that when the Supreme Court granted an appeal on the adverse decision against Johnson quashing the writ of habeas corpus, this placed the prisoner in the custody of the Supreme Court itself. As the court could not physically act as custodian, it thereupon delegated its power and authority in the premises as a custodian to Shipp, the sheriff of the county of Hamilton, in whose jail the order of the Supreme Court directed that the prisoner should be confined waiting decision of his appeal. While Johnson was in Shipp's custody under this order of the Supreme Court of the United States, a mob broke into

88

the jail and killed Johnson, the prisoner, the sheriff himself participating and virtually being the leader of the unlawful assemblage. Upon the facts above recited Shipp was adjudged by the Supreme Court to be guilty of a contempt of the court and the decision was put upon the ground that he was acting as a bailee or custodian of the court itself.

■ This decision is in line with our conclusion here that the penitentiary officials of Colorado are not guilty of the contempt charged against them in the Denver district court because they are not officers or custodians of that tribunal, but are state officers and liable for their wrongful acts, if any they committed, to prosecution under the Constitution and statutes of the state for a violation of official duty.

It follows that, as the district court does not have jurisdiction of the subject matter of the alleged contempt, the writ of prohibition should issue as prayed for.

Writ of prohibition granted.