No. 17,205.

PEOPLE EX REL. DUNBAR, ATTORNEY GENERAL *v.* COUNTY COURT OF THE CITY AND COUNTY OF DENVER ET AL.
(262 P. [2d] 550)

Decided October 19, 1953.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank A. Wachob, Deputy, for petitioner.

Mr. John C. Banks, Jane Woodhouse, for respondents.

*En Banc.*

Mr. Justice Clark delivered the opinion of the court.

This is an original action filed in this court by the Attorney General to the end that the county court of the City and County of Denver, David Brofman judge thereof, and John C. Banks, as city attorney of the City and County of Denver, be prohibited from proceeding further upon, and in regard to, matters pertaining to, citations issued out of said court on July 17, 1953, directed to J. Price Briscoe, Dr. A. C. Sudan, and James E. Hinds, commanding each of them to be and appear before said county court on the 23rd day of July to show cause why he should not be held in contempt of said court. We directed issuance of an alternative writ on July 22nd.

Briscoe is Director of State Institutions; Dr. Sudan is Superintendent of the State Home and Training School; and Hinds, as an executive assistant, is in charge of the State Home and Training School at Ridge, all pursuant to the provisions of the Administrative Code (subsection 11 of section 9, article 2, chapter 2 of the 1941 Session Laws as amended by chapter 70, 1951 Session Laws, page

141, et seq. Further amendment to said subsection 11 (d) by chapter 64, 1953 Session Laws, page 201, is not here pertinent.)

From the pleadings before us it appears that on September 23, 1952, a little girl, about eight years of age, was adjudged to be a mentally defective person by said county court. July 7, 1953, said county court entered its further order committing the said mentally defective person to the state home and training school at Ridge, Colorado. On July 17, 1953, the sheriff of the City and County of Denver, pursuant to said commitment order and under the authority thereof, caused said mentally defective person so ordered committed, to be transported to the State Home and Training School at Ridge, where admission of said child was refused by the officers in charge for the reason, as stated in the sheriff's affidavit, the verity of which statement being nowhere challenged or denied, "that there was no available bed space in the institution and that they could not admit the child." On the basis of the foregoing facts it further is asserted that the staff officers of the State Home and Training School at Ridge were acting under the supervision of said Briscoe, Sudan and Hinds; that refusal to honor said commitment was pursuant to express instructions by said Briscoe, Sudan and Hinds; and that the said Briscoe, Sudan and Hinds, in directing said staff officers to refuse admission of said patient, contrary to the order of commitment, acted wrongfully and illegally, and in contempt of said court.

None of the proceedings of the county court with respect to the mentally defective child, including the order of commitment to the State Home and Training School at Ridge, are in anywise material to the issue now before us. The sole question with which we are here concerned relates to the citations for contempt and, whether in ordering said citations to issue, the county court abused its discretion or exceeded its jurisdiction.

The parties to both sides of this controversy appar-

ently are in agreement as to the issues involved, but their respective contentions as to the correct solution thereof are in diametric opposition. Two questions are presented: (1) Is a commitment issued from a county court a mandatory order requiring admission to the State Home and Training School of the person therein named, leaving no discretion whatsoever to the officials in charge of that institution? (2) May the officials in charge of the State Home and Training School, being officers of the executive department of state government, be held in contempt of a county court upon their refusal to comply with, or honor, such a commitment order?

It is the position of the respondents that courts are entrusted by the Constitution and statutes of the State of Colorado with the determination of all matters relative to insanity and other mental incompetency, and that upon such determination it devolves upon the court, as one of its duties, to make such order of commitment as the circumstances of each particular case require; that this commitment is a positive order and direction which those in charge of the several institutions of the state for the care of mental patients are required to honor; that there is no discretion vested in the staff officers of said institutions in this respect whatsoever; and that admission pursuant to the command of said commitment order is mandatory. It is contended that proper consideration of statutory construction supports respondents' theory. Statutes are cited to the effect that,"it shall be the duty of the court or judge to enter an order committing the said person to the State Home and Training School for Mental Defectives" (section 7, chapter 105, '35 C.S.A., as amended by section 1, chapter 171, 1945 Session Laws, page 466), and particular reliance is placed upon section 52 of chapter 105, '35 C.S.A., as follows: "There shall be admitted to the State Home and Training School feeble-minded persons, incapable of receiving instruction in the public schools," etc.

■ ■ We agree that the solution of this difficult problem is largely one of determining the true intent of the legislature. We agree also with respondents' contention that the county court "shall commit" and that "there shall be admitted to the state home" the person thereto committed, but we decline to concur in their position that these things shall be peremptorily and immediately done. It is entirely for the county court to determine that a child shall be sent to the State Home and Training School, and commit him accordingly. It is proper that such child shall be admitted to said home, but it is not essential that he be accepted for admission until such time as there is available suitable living accommodations. Without such safeguard to prevent undue overcrowding it is possible to prevent the school from accomplishing the prime purpose for which it was designed.

Section 48 of chapter 105, '35 C.S.A., pursuant to which said state home is authorized, reads as follows: "There is hereby established the state home and training school for mental defectives. The essential object of said school and home shall be the mental, moral, physical education and training of feeble-minded children and the treatment and care of persons so mentally defective as to be incompetent to care for themselves or their property."

The name itself indicates the purpose for the establishment of the school, and this is emphasized by the language of the statute. *"The essential object of said school and home shall be the mental, moral, physical education and training of feeble-minded children * * * ."* (Emphasis supplied.) The object and purpose of this institution is so vastly different from that of the state hospital that it is readily seen why the state legislature refrained from imposing upon it an obligation to receive immediately all comers as was done in the case of the state hospital. The two institutions are entirely different: one primarily custodial for persons declared to be wards of the state; the other for the purpose of education and

training. Violently insane persons must promptly be placed in custody, not only for the safety of themselves, but also for that of the public in general. Children and other persons sent to the State Home and Training School ordinarily are not dangerous, and their confinement is not essential. Their education and training is the paramount aim. To announce a rule requiring said State Home and Training School to admit all who come to it under commitment orders, would be to destroy the very purpose for which the school was established. Hence, we conclude that the staff officers of such institution are clothed with a reasonable discretion with respect to admissions, in that they may refuse to honor commitments whenever their facilities are so overcrowded that to provide care, accommodations and training to another would result in unreasonable hardship upon those already there, as well as upon the newcomer. Such committed person "shall be admitted" when, and as soon as, there is adequate room available for him.

In a case of different factual background, but wherein a law issue of striking similarity to that presented in the instant case arose, the Supreme Court of Minnesota said: "Even the duty to admit the patient to a state institution pursuant to a commitment is discretionary. The evident reason is that the board must act with regard to its accommodations and means as well as the needs of the patient. All who are committed cannot be admitted, nor is it desirable that they should be under all circumstances. If it were so, the purpose of the institution might be defeated by overcrowding, resulting in part from the admission of those who are not fit subjects, and thus make training less effective, if not impossible." *County of Stearns v. Township of Fair Haven*, 203 Minn. 11, 279 N.W. 707, 709.

What we already have said, for all practical purposes, disposes of this controversy. It might be well, however, in addition, to point out the complete lack of jurisdiction in the county court in the issuance of the

citations for contempt against Briscoe, Sudan and Hinds in this case. They were not, and are not, officers of the county court of the City and County of Denver, nor of any other judicial tribunal. They, as hereinbefore stated, are officials of the executive branch of state government. A state officer, under such circumstances, may not be required to answer in response to a contempt citation. *People ex rel. v. District Court,* 89 Colo. 78, 299 Pac. 1; *Roberson v. People ex rel.,* 40 Colo. 119, 90 Pac. 79; *Reilly v. Dale,* 113 Vt. 1, 28 A. (2d) 637, 638.

Respondents contend that such is the rule only under certain conditions and does not apply where the state official is under duty to observe and follow the order of the court. Counsel for respondents cite a number of cases by way of authority for their position, but they involve instances where the state official concerned was a party to some type of litigation. Under such circumstance, certainly the official would be under duty to obey the judgment and direction of the tribunal wherein the action was pending. In the present case said officials were parties to no proceeding, had not submitted themselves to the jurisdiction of said court, and consequently were not amenable to its commands. The court was clearly acting in excess of its jurisdiction in issuing the contempt citations.

The alternative rule heretofore issued is made absolute.