802 P.2d 1101 (1989)
The PEOPLE of the State of Colorado, Petitioner-Appellee, In the Interest of S.C., a minor,
and Concerning Orlando Martinez, Mark Mandler, David Bennett and Mary Hoover, Appellants.
No. 88CA1360.
Colorado Court of Appeals, Div. II.
December 21, 1989.
Rehearing Denied January 18, 1990.
Certiorari Denied January 14, 1991.
*1102 Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Everett Engstrom, Deputy Dist. Atty., Denver, for petitioner-appellee.
Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carolyn Lievers, First Asst. Atty. Gen., Denver, for appellants.
Opinion by Judge SMITH.
Four officials of the Colorado Department of Institutions appeal a Denver Juvenile Court judgment finding them in contempt for refusing to accept a juvenile committed to the Gilliam Youth Center. We affirm.
The Gilliam Youth Center began an extensive renovation project in March of 1988. As a result, the Department rented space for each youth committed from Denver at the Arapahoe County Detention Center.
Mark Mandler, director of local services for the Division of Youth Services, was concerned that appropriated funds would be exhausted prior to the end of the fiscal year; therefore, he adopted the policy that no more youths would be accepted at the Arapahoe facility. Pursuant to that policy, he informed the court by letter on June 9, 1988, that effective immediately the Division would refuse to accept at its designated receiving center any youth committed to the Department pursuant to § 19-2-703(1)(h), C.R.S. (1988 Cum.Supp.), or pursuant to municipal ordinance violations. However, Mandler noted that, in exceptional cases, if there was a significant risk to the community, a youth could be accepted on a case by case basis by David Bennett, Director of the Denver Regional Division of Youth Services.
On June 16, 1988, a commissioner of the juvenile court adjudicated S.C. to be a juvenile delinquent. An order and mittimus was issued committing S.C. to the Department for a period of 15 days as a condition of probation pursuant to both §§ 19-2-705(1) and 19-2-703(1)(b). The juvenile court directed the chief probation officer to deliver S.C. to the designated receiving center located at the Arapahoe County Jail.
Upon S.C.'s arrival at the receiving center, administrator Mary Hoover refused to admit S.C. based on the June 9, 1988, blanket policy adopted by her supervisors. S.C. was then returned to the court and sent home with his mother to await space at a detention facility. Because of to these actions, the juvenile court issued citations to Mandler, Bennett, Hoover, and Orlando Martinez (director of the Division) to show cause why they should not be held in contempt of court for refusing to accept S.C. into the receiving center.
After a hearing, the court determined that its orders were violated by persons who had the ability to comply, and accordingly, it held all four individuals in contempt. In order to vindicate the dignity of the court, each contemnor was ordered to pay a fine into the registry of the court. This appeal followed.

I.
Initially, the Department officials assert that the court lacked jurisdiction to hold them in contempt because they were not officers of the court identified in C.R.C.P. 107(a) as persons whose compliance could be enforced by a contempt proceeding. We disagree.
*1103 Generally, state officials who are not parties to a proceeding may not be held in contempt of court. People ex rel. Dunbar v. County Court, 128 Colo. 374, 262 P.2d 550 (1953). However, in In re People v. Lockhart, 699 P.2d 1332 (Colo.1985), our Supreme Court stated:
"We determine that corrections officials are officers of the court for the limited purpose of taking custody of prisoners as directed by the mittimus. Otherwise, the court would be without the ability to comply with section 16-11-301(1) and to effectuate the commencement of a prison sentence. Because the district court has jurisdiction to issue the mittimus ordering officials as officers of the court to take custody of the prisoner, the court also has jurisdiction to enforce that order by a contempt proceeding."
The Colorado Children's Code provides that "the court, as a condition of probation for a juvenile ... may impose a commitment or detention." Section 19-2-705(1), C.R.S. (1989 Cum.Supp.). And, acting pursuant to that statute, the juvenile court ordered placement of S.C. in a detention facility.
Section 19-2-1115(1)(a), C.R.S. (1989 Cum.Supp.) imposes a mandatory duty upon the Department to provide such detention services:
"Detention services for temporary care of a juvenile, pursuant to this article, shall be provided by the department of institutions...."
Contrary to the officials' position, the duty imposed upon the court to sentence a juvenile to the custody of the Department officials differs from the situation in People ex rel. Dunbar v. County Court, supra. The Lockhart court noted this difference, stating: "[T]he time of acceptance of a person committed to the State Home was left to official determination that suitable living accommodations were available." In contrast, here, the Department officials had a nondiscretionary duty to take custody of the juvenile delinquent in order to effectuate the sentence imposed by the juvenile court under § 19-2-703. See also §§ 19-2-705 and 19-1-1115(1)(a), C.R.S. (1989 Cum.Supp.).
Because we conclude that the juvenile court had jurisdiction to issue the mittimus ordering the Department officials as officers of the court to take custody of the juvenile, the court also had jurisdiction to enforce that order by a contempt proceeding.

II.
The Department officials next assert that the court erred in finding them in contempt because they did not have the present ability to obey the court's order. We disagree.
A court may enter a finding of contempt for refusal to obey a court order under C.R.C.P. 107 only if it finds that a party who has the duty to obey the order and a present ability to do so has refused to perform the act required. In re Marriage of Harris, 670 P.2d 446 (Colo.App.1983).
Here, the Department had the staff and the physical capacity to accept S.C., and overcrowding was not the reason for the juvenile's nonacceptance. See In re People v. Lockhart, supra. Rather, the Department's refusal to accept S.C. was based on a blanket administrative policy which excluded an entire class of committed juveniles. Moreover, the evidence demonstrated that S.C. was excluded even though sufficient funds were available to accommodate him on June 16, and would have been available throughout the period of his committment.
Accordingly, the officials cannot claim impossibility of compliance since on the date in question they had the present ability to comply. Thus, the juvenile court properly held the Department officials in contempt of court because they failed to fulfill their duty to accept the juvenile under the statute.

III.
The officials next assert that the juvenile court abused its discretion by imposing fines on each of the contemnors. We disagree.
*1104 Upon a finding of civil contempt, a fine payable to the court is permissible for vindication of the dignity of the court. Schnier v. District Court, 696 P.2d 264 (Colo.1985).
Here, the juvenile court, in making its ruling stated that:
"In order for the court to be able to carry out its function, to carry out the decision it makes, it has to be able to maintain a perception in the eyes of the citizens that it is a body to be respected, obeyed, and when its orders are not obeyed, there is a threat to the entire institution of the court.... If that is allowed to continue, the ability of the court to perform its function is undermined and destroyed."
The court then ordered appellant Hoover to pay $50, Bennett $300, and Mandler and Martinez $1000 each into the court's registry in order to vindicate the dignity of the court.
The matter of dealing with contempt is within the sound discretion of the trial court, and its determination is final unless an abuse of such discretion is clearly shown. Conway v. Conway, 134 Colo. 79, 299 P.2d 509 (1956). We perceive no such abuse present here, and accordingly, the fines as imposed will stand.

IV.
Lastly, appellant Mandler asserts that the juvenile court did not have jurisdiction over him because he was not properly served. We disagree.
C.R.C.P. 107(c) provides in pertinent part:
"When it appears to the court that a contempt has been committed ... it may ex parte order a citation to issue to the person so charged to appear and show cause at a time designated why he should not be punished therefor. The citation and a copy of the motion and affidavit shall be served upon such person a reasonable time before the time designated."
Under this rule, a contemnor has the right to have notice of the hearing and to have an opportunity to be heard. Wright v. District Court, 192 Colo. 553, 561 P.2d 15 (1977).
Here, the juvenile court found that Mandler admitted under oath that he had received the show cause documents, that the secretary of Denver Youth Services was served with the documents, and that Mandler had time to prepare for the hearing. Accordingly, it concluded that service was proper under C.R.C.P. 107.
In Stubblefield v. District Court, 198 Colo. 569, 603 P.2d 559 (1979), the court stated that:
"[C.R.C.P.] 4(e)(1) requires either personal service on the party or substituted service at his usual place of business, with his stenographer, bookkeeper, or chief clerk.... Whether that personal or substituted service has been properly made, however, is a question of fact to be resolved by the trial court. Yates v. Tatum, 60 Colo. 484, 155 P. 328 (1915). When there is evidence in the record to support the trial court's findings, we will not substitute our judgment for that of the trial court."
Here, the evidence supports the trial court's finding of fact that service upon the secretary satisfied the requirements for substituted service under C.R.C.P. 4.
We have considered the other contentions of error and find them to be without merit.
Judgment affirmed.
NEY and VAN CISE[*], JJ., concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).