[Criminal No. 614.   Filed June 19, 1925.]

[237 Pac. 203.]

## C. E. HOWARD, Appellant, v. STATE, Respondent.

1. CONVICTS—CRIMINAL LAW—SENTENCE MUST BE THAT WHICH LAW ANNEXES TO OFFENSE, AND MUST BE CARRIED OUT AS PRESCRIBED BY LAW.—Conviction for crime does not alter rule that life, liberty, and property of humblest citizen may not be invaded, and sentence must be only that which law annexes to offense, and must be carried out as imposed, executive officers having no power to increase or diminish its severity except as prescribed by law.

2. CONSTITUTIONAL LAW — CRIMINAL LAW — FORFEITURES — PRISONS — UNDER CONSTITUTIONAL PROVISIONS AS TO CRUEL PUNISHMENTS, DUE PROCESS, AND FORFEITURES, SUPERINTENDENT OF PRISON MAY DETAIN PRISONER ONLY IN ACCORDANCE WITH COMMITMENT ORDERS.—In view of Constitution, article 2, sections 4, 15, 16, guaranteeing due process of law, and prohibiting cruel and unusual punishment, and providing that no conviction shall work corruption of blood or forfeiture of estate, superintendent of prison has authority only to receive and safely keep prisoners, and if, without legal justification, he subjects prisoner to unreasonably harsh treatment not necessary to his safe confinement, he commits a wrong which the courts are open to redress.

3. PRISONS—SOLITARY CONFINEMENT ON BREAD AND WATER WITHOUT CAUSE HELD PRIMA FACIE ILLEGAL.—While the superintendent of prisons has authority to punish infractions of rules by stricter confinement of the offender, 30 days' deprivation of all food save bread and water, and five months' solitary confinement without cause, *held prima facie* harsh, unreasonable and illegal.

4. PRISONS—SUPERINTENDENT OF STATE PRISON MAY BE PUNISHED FOR CONTEMPT IN EXCESSIVE SEVERITY TO PRISONER ON MOTION TO

———————

2.   See 8 R. C. L. 262.
3.   See 21 R. C. L. 1179.

SHOW CAUSE.—Superintendent of state prison, being *ex-officio* officer of superior court for carrying out its proper sentences, may be punished for contempt for inexcusable and excessive severity in punishing prisoners in his care.

See (1) 12 C. J., p. 1198, n. 16 New, p. 1209, n. 67, 74 New. (2) 16 C. J., p. 1353, n. 6; 25 C. J., p. 1172, n. 50. (3) 32 Cyc., p. 323, n. 83, p. 329, n. 52. (4) 13 C. J., p. 42, n. 4; 32 Cyc., p. 329, n. 52.

APPEAL from an order of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Order reversed and case remanded.

Mr. C. H. Young and Mr. John W. Ray, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. Frank J. Duffy, Assistant Attorneys General, for the State.

LOCKWOOD, J.—C. E. Howard was convicted in the superior court of Maricopa county of the crime of perjury, and was, on March 15th, 1924, sentenced to serve a term of not less than seven nor more than ten years in the state prison. No complaint is made of the regularity of the proceedings up to the time of his incarceration. On December 13th, 1924, a motion, with an affidavit in support thereof, was filed in the case in the superior court, setting up substantially that on July 20th, 1924, "without fault on his part or cause therefor, and without trial or charge or investigation or notice being given or even explanation or excuse being given," he was placed in a dark cell or dungeon, and for thirty days fed on bread and water, which confinement continued until the day of the motion; that he was allowed to speak to no person except the one who brought him his food; and that only twice during said period had he been allowed to leave the dungeon, and then but for a few hours at a time

as a witness in certain proceedings. The relief
prayed for was that a citation be directed to the
superintendent of the prison ordering him to show
cause why petitioner should not be given the same
treatment as other prisoners, and why the superin-
tendent should not be punished for contempt for vio-
lation of the order of commitment. The court made
an order denying the motion for an order to show
cause, and petitioner appealed.

The crowning glory of the criminal jurisprudence
of the English-speaking peoples is and ever has
been that the life, liberty, and property of the hum-
blest citizen could only be invaded by the law, and in
strict conformity to that law. From the days of
Magna Charta when the free barons of England
wrung from a tyrannical king the solemn promise
that, "no freeman shall be taken, or imprisoned, or
be disseised of his freehold, or liberties or free cus-
toms, or be outlawed or exiled, or any otherwise de-
stroyed; nor will we pass upon him, nor condemn
him, but by lawful judgment of his peers, or by the
law of the land," down to our own Constitution (ar-
ticle 2, §§ 4, 15), with its reaffirmation that "no per-
son shall be deprived of life, liberty, or property
without due process of law," and that "no cruel nor
unusual punishment shall be inflicted," the rule is the
same. Nor does a conviction of crime alter the rule.
The sentence pronounced must be only that which the
law annexes to the offense. *In re Bonner,* 151 U. S.
242, 38 L. Ed. 149, 14 Sup. Ct. Rep. 323. And, such
sentence must be carried out as imposed, the execu-
tive offcers of the state having no power either to
increase or diminish its severity except as prescribed
by law. *Ex parte McClure,* 6 Okl. Cr. 241, 118 Pac.
591; *Ex parte Pearson,* 59 Ala. 654; *Kirby* v. *State,*
62 Ala. 51.

For many centuries the fundamental idea back of
criminal law was one of vengeance. Criminal pro-

ceedings were not instituted by the state, but by the injured party, or in case of his death by his relatives, and if they were satisfied with the reparation offered by the offender, the state was indifferent unless it concerned certain offenses directly affecting the public peace and safety. The old Mosaic doctrine of "an eye for an eye and a tooth for a tooth" held full sway, and the punishment was, so far as possible, analogous to the crime. Gradually, however, it was realized that society at large was entitled to protection against the recurrence of the same offense, and since it was then accepted without question that the criminal sinned through deliberation and free will, the law, following the gloomy theology of that period, endeavored to repress crime through fear, and punishment grew more and more terrible. To us of the present generation the burning, breaking on the wheel, boiling alive, and the various tortures of the law which continued up to even a comparatively recent period, read like scenes from the Inferno of Dante.

But beginning with the eighteenth century a new thought gradually arose. First timidly advanced by a little group of philosophers, it spread, until now there are few, if any, who will openly uphold the old idea that vengeance for the crime is the purpose of punishment by law, while many students of criminology believe that crime is as truly a disease as insanity, and should be treated as such, and even those who do not go to that extent hold that if punishment ever as a matter of fact deters crime, it is its certainty rather than its severity which is effectual.

Under the common law, certain incidents followed a conviction of felony, such as forfeiture, corruption of blood, and what was known as "civil death," but in accordance with our more humane modern policy these have been swept away. Article 2, section 16, Constitution of Arizona.

Considering the whole history of penal legislation of the last hundred years in the United States, and particularly of the last generation in Arizona, we feel justified in stating that our state at present adheres to the general policy, that while for the protection of society it is necessary to deprive the offender against its laws of his liberty for a greater or lesser period, yet such deprivation should be conducted as humanely as possible, and with the view of eventually, if that happy result is possible of realization, restoring him as a useful citizen to society.

When, therefore, the superintendent of the prison receives the commitment, which is his only authority for detaining any man within that prison, he may only do what that commitment orders him, to wit, "receive and safely keep" the defendant for the time specified therein. If, without legal justification, he does more than is necessary to so safely keep him, he is violating the law just as much as he is in releasing him before the expiration of his minimum term of sentence unless he has been legally pardoned. On the other hand, he not only may but must do what is necessary to "safely keep" the prisoner. If, for example, a prisoner attempts to escape from the mild confinement now prescribed by our law, and to our personal knowledge generally enforced by our prison authorities, it is highly proper that such stricter confinement be imposed as may be necessary to hold him. If he persists in violating the reasonable rules which are necessary in such an institution, he will naturally be deprived of the privileges extended to those who comply therewith, and it will not lightly be presumed that an officer of the law will require stricter confinement or deprivation of privileges without just cause therefor.

But, in any case, he is still under both the power and protection of that law which should be as vigilant

to guard his rights as to punish his transgressions. Nor should the fact that he has once fallen under its ban deafen the ear of justice. If he complains that the rights still left him are being violated, the law should be particularly zealous to investigate an alleged wrong against one whom it has deprived, even though justly, of the precious boon of liberty. We hold, therefore, that any prisoner who, while under sentence for crime, is subjected to unreasonable and harsh treatment without legal justification therefor, may appeal to the law for protection, and we further hold that thirty days' deprivation of all food save bread and water and five months' solitary confinement of the nature set up in the petition, inflicted upon one who has conducted himself in all respects as a quiet, tractable prisoner, obedient to the rules of his abode, and in the absence of any cause therefor, is *prima facie* harsh and unreasonable · treatment.

But, it is argued, admitting the right petitioner has mistaken his remedy. When a man possesses a substantial right, the law will search diligently for some way of enforcing that right, and will not dismiss him without relief. It is plain that *habeas corpus* would not suffice to meet the emergency, for the petitioner admits he is rightfully within the prison, and secondly, that writ would not remedy a deprivation of proper food, even though it might the close confinement. What is it that petitioner complains of? Not that his sentence is being carried out in accordance with the decree of the court, but that the order directed by that court to the superintendent of the prison as its executive officer is being disregarded and violated by the latter.

The situation thus stated obviously suggests the proper remedy. When a court of record in a civil action orders a party to do or not to do a certain

thing, and its order is disobeyed, the remedy is the invocation of that inherent power existing in all such courts to punish a violation of its order as a contempt. 13 C. J. 47. We see no reason why this power does not exist as well in criminal cases. The precise question arose in the case of *In re Birdsong* (C. C.), 39 Fed. 599, 4 L. R. A. 628; and the court held that attachment for contempt was the proper proceeding, citing, in its opinion, 2 Hawkins, P. C., chapter 22, paragraph 31.

The superintendent of the state prison is *ex-officio* an officer of each superior court of the state for the purpose of carrying out its proper sentences, and is subject to attachment for contempt if he departs therefrom, either on the side of excessive leniency or severity, without legal excuse therefor.

The petition on its face shows a state of facts authorizing, and, indeed, requiring, that the superior court under whose commitment petitioner was held in custody issue a rule to show cause why the alleged conditions exist if they do. If, on a return, it should appear that the allegations are untrue, or that there was reasonable necessity in the course of the prison discipline for such treatment of the petitioner, the rule should be discharged; otherwise the court should so proceed that justice will be done.

The case is remanded to the superior court of Maricopa county for action not inconsistent with this opinion.

McALISTER, C. J., and ROSS, J., concur.