442 P.2d 844

Billie L. GAULT, the mother of James Robert Walmsley, Petitioner,

v.

The BOARD OF DIRECTORS OF STATE INSTITUTIONS FOR JUVENILES and Steve Vukcevich, Superintendent of the Arizona State Industrial School, Respondents.

No. 9305.

Supreme Court of Arizona. In Banc. June 26, 1968.

See also 442 P.2d 848.

Gary Peter Klahr, Phoenix, for petitioner.

Darrell F. Smith, Atty. Gen., Norval C. Jesperson, Asst. Atty. Gen., Phoenix, for respondents.

LOCKWOOD, Justice.

Billie L. Gault, mother of James Robert Walmsley, hereafter called the juvenile, brought a petition for writ of habeas corpus requesting that the Board of Directors of the State Institutions for Juveniles or the Superintendent of the State Industrial School be ordered to return the juvenile to the Arizona Youth Center for diagnosis or treatment or in the alternative that appropriate orders be made to give him the services provided by an order of the Juvenile Court dated April 29, 1968.

The facts appear to be as follows: On April 11, 1968 the juvenile was adjudged a delinquent child by the Juvenile Court in Maricopa County. He was placed on probation and directed to engage in a weekend work program at the Kiwanis Hall at the detention home as one of the terms of probation. Thereafter the juvenile was detained at the Maricopa County Detention Home on a charge of using dangerous drugs. On April 29, 1968 a hearing was held before a referee of the Juvenile Court. The referee found that the juvenile had been experimenting with drugs and found that the Arizona Youth Center was the only place where diagnostic procedures could be rendered in a controlled environment. He therefore recommended that the juvenile be committed to the Board of Directors of State Institutions for Juveniles (hereafter referred to as the Board) for placement at the Arizona Youth Center for diagnosis and for such treatment as might be necessary. This recommendation was presented to the Judge of the Juvenile Court and the Court confirmed the conclusions and recommendations of the referee by an order, which converted it to a judgment of the Court pursuant to § 8–230 A.R.S. (1956).

Thereafter the juvenile was transported to the Arizona Youth Center where he remained for two days, after which he was sent to the Industrial School at Fort Grant, presumably upon the authority of the Board.

We are of the opinion that under the order of commitment the Board had no authority to change the place of commitment. Some discussion of the authority of the

Board is found in Ridgway v. Superior Court, 74 Ariz. 117, 245 P.2d 268 (1952). In that case a writ of prohibition was issued to the Superior Court which had instituted a contempt proceeding against the Superintendent of the State Industrial School on a charge of cruel and unusual punishment of the juveniles committed to the Industrial School by the Juvenile Court. In prohibiting the Superior Court from maintaining the contempt proceedings, this Court held that the power to commit a juvenile was the only power conferred upon the judges, and that the administration of the laws for the detention, education and treatment of juvenile offenders is vested in the Board. This Court further pointed out that the Board and its Superintendent (the Superintendent of the Industrial School) were state officers of the Executive Branch and their allegiance as such officers was not to the Court but to the law.

The Court reviewed a former decision, Howard v. State, 28 Ariz. 433, 237 P. 203, 40 A.L.R. 1275 (1925) which held that a contempt proceeding against the Superintendent of the Prison for subjecting to cruel and unusual punishment a prisoner sentenced by the Superior Court was proper. *Howard* held that the order of commitment was that the Superintendent "receive and safely keep" the defendant for the time specified therein, and that any "cruel and unusual treatment" was a violation of the order, hence punishable as a contempt.

In the *Ridgway* case, this Court specifically overruled *Howard* on the ground that it usurped to the courts powers not intended or conferred. *Ridgway* further held, however, that a warden could be proceeded against by contempt for permitting a prisoner to roam at large or be released prior to the expiration of the sentence, on the basis that such conduct would be a violation of the explicit words of the mandate of the commitment (to receive and safely keep), though not to its connotations since connotations or implications from orders are not "of the stature of *orders* that no one can or should misinterpret and for whose violation the stern remedy of contempt will reach". 74 Ariz. at 126, 245 P. 2d at 274 (1952).

We do not disagree with the holding in *Ridgway*. Nevertheless in the instant case the order of the Court was that the juvenile be committed to the Board for placement in a specific institution, i. e., the Arizona Youth Center. Insofar as the intent to commit the juvenile to a specific institution is concerned, such an order was unequivocal and one which no one could misinterpret.

What then was the duty and the authority of the Board under the order of commitment? We have examined the statutes dealing with the authority of the Board and its predecessors for the control and governing of juvenile institutions since the inception of its predecessor, the Board of Control, in 1901, and nowhere do we find authority given to the Board to determine to which institution a juvenile shall be committed except in the case of "girl juvenile offenders". Section 8–310 A.R.S. (1956) gives the Board specific authority to make arrangements with private institutions in the state for the detention, education, employment and reformation of girl juvenile offenders, and to "assign the girl juvenile offender to an appropriate institution with which an arrangement has been entered into" as stated.

The powers and duties of the Board appear in Art. 1, Chap. 3, Title 8, A.R.S. (1956). In § 8–301 a "juvenile offender" is defined as "a person who has been committed *according to law* to an institution for the education and treatment of juvenile offenders". Section 8–302 provides that "the government of state institutions for juvenile offenders and the administration of laws for the detention, education and treatment of juvenile offenders is vested in the board of directors of state institutions for juveniles". Further, § 8–308 provides that "a [juvenile] shall not be received by the state industrial school or by an institution for girl juvenile offenders, *except upon commitment by the juvenile court*".

In Chap. 6, Laws of 1965, 3d Spec.Sess., the legislature authorized the Board to purchase land and to construct a juvenile institution of a specific type, now known as Arizona Youth Center. The legislature in § 1 of the Act stated its intent as follows:

"The legislature recognizes the urgency of establishing, and hereby declares its intent to establish at or near a population center in Arizona, a facility to provide programs for the reception, evaluation, diagnosis, day care, outpatient treatment, detention, correction, training and treatment, for the rehabilitation, post-release, parole and readjustment into society of male juveniles adjudged delinquent but *who are not in need of the maximum care provided at other state institutions.* To facilitate this intent, the legislature hereby provides for the immediate programming, planning and construction of such a facility." (Emphasis added.)

The powers of the Juvenile Court for commitment of a juvenile offender are set out under the Juvenile Code § 8–231, as amended:

"A. The judge shall make such order for the commitment, custody and care of the child as the child's welfare and the interests of the state require. He may commit the child:

"1. To the care of his parents, subject to supervision of the probation officer.

"2. To a probation officer, subject to such conditions as the judge may impose.

"3. To a suitable institution.

"4. To an association willing to receive him.

"5. To a reputable citizen of good moral character.

"6. To an appropriate public or private agency authorized to care for children.

"7. To a suitable school.

"8. To the state industrial school.

"9. To an institution provided for juvenile offenders.

"10. To maternal or paternal relatives, provided they are physically and financially able to provide proper care."

Since the enactment of the above quoted statutes the legislature on March 27, 1968 enacted Chapter 198, Laws of 1968 setting up a State Department of Corrections which eliminated the Board and transferred the powers and duties of the Board to the new department. Although the previous statutes are applicable in the instant case, we believe that it is significant to note that the powers and duties of the new department with regard to juvenile institutions have not been changed materially from those powers and duties of the previous Board. The provision for assignment of girl juvenile offenders to appropriate institutions is reiterated and no change is made with regard to placement of a male juvenile offender.

We believe, reading the statutes in pari materia, that it was the intent of the legislature that the commitment of a juvenile offender to a particular institution in the case of male juvenile offenders was intended to be within the authority of the committing juvenile court. So far as the care, treatment and maintenance of the juvenile offender thereafter is concerned, this authority was intended to be conferred upon the Board. It further appears that the institution authorized by the legislature in 1965, now known as the Arizona Youth Center, to which the juvenile herein was committed, is "an institution provided for juvenile offenders" within the meaning of subparagraph nine of § 8–231, subsec. A, supra. Although the court's order in the present case stated the juvenile was committed to the Board, it was qualified by the words "for placement at the Arizona Youth Center", which in our opinion have the effect of committing the youth to that institution and not to the Industrial School. The treatment to be given the juvenile upon his commitment to such institution of course, is specifically reserved to the Board rather than the Court.

Therefore, we are of the opinion that the order of commitment in the present case by the Court was for placement in the Arizona Youth Center and that the Board could not change the place of commitment. We are further of the opinion that the wording of the order that the placement was for diagnosis and for such treatment as might be necessary, was indicative of the reason for commitment to the Arizona Youth Center, and therefore in full accord with the legislative intent in the creation of that institution. The Juvenile Court therefore had the authority to commit to the particular institution, and the Board had no authority to place the juvenile in any other institution. However, after placement in the institution, the authority to determine the type of treatment to be given to the juvenile was vested in the Board, and not in the Court.

For the foregoing reasons it is ordered that the juvenile be returned to the Arizona Youth Center by the Superintendent of the State Industrial School or in the alternative that he be returned to the Juvenile Court for such further proceedings as it deems proper and necessary.

McFARLAND, C. J., UDALL, V. C. J., and BERNSTEIN, J., concur.

STRUCKMEYER, Justice (concurring).

I express considerable doubt that the legislature intended to make a distinction between the power of the superior court in handling male and female juvenile offenders, and I think the distinction made by the majority is extremely tenuous. However, it is in the end a legislative matter. I am willing to concur in the knowledge that if this decision does not express the intention of the legislature, a change can readily be made. The Constitution of Arizona, by Article VI, § 15, A.R.S., provides: "The powers of the judges to control such children shall be as provided by law."