**438**

466 P.2d 732

The ADOPTIVE PARENTS, Petitioners,

v.

The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MARICOPA, and William A. Holohan, a Judge thereof, and the Arizona State Department of Corrections, Respondents.

No. 9950.

Supreme Court of Arizona,
In Banc.

March 23, 1970.

Renaud, Cook, Miller · & Cordova, by Bradley J. Walsh, Phoenix, for petitioners.

Gary K. Nelson, Atty. Gen., by William P. Dixon and Malcolm P. Strohson, Asst. Attys. Gen., Phoenix, for respondents.

DONOFRIO, Judge, Court of Appeals, Department A.

This is a special action proceeding asking this Court to review by certiorari an order of the Juvenile Court in Maricopa County.

The Juvenile Court ordered petitioners to pay a sum representing arrearages in care and maintenance payments for petitioner's son who had been placed in The Arizona State Industrial School at Ft. Grant by the Board of Directors of State Institutions for Juveniles, hereinafter referred to as the Board.

In the instant proceeding, the question which must be determined is whether the Juvenile Court, under the facts presented, exceeded its jurisdiction. The orders of the Juvenile Court are subject to appellate review by the Supreme Court by certiorari as there is no right of appeal from a Juvenile Court order. Application of Gault, 99 Ariz. 181, 407 P.2d 760 (1965), reversed 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967); In re Anonymous, 3 Ariz. App. 351, 414 P.2d 435 (1966); Ginn v. Superior Court, In and For County of Pima, 1 Ariz.App. 455, 404 P.2d 721 (1965). At the informal hearing we issued a writ of certiorari and the record has been certified to us.

The child involved was adopted in infancy by petitioners. At an early age he began to have emotional problems and was periodically under psychiatric care. Prior to coming to the attention of the Juvenile Court he had been placed privately at the Circle S Ranch, a private facility which cares for children with emotional and behavioral problems. Because of frequent

runaways the child was placed in Camelback Hospital, a private institution caring primarily for psychiatric cases, but was later returned to the Ranch. On December 5, 1966 a juvenile petition was filed and on January 16, 1967 a hearing was held thereon. Deleting names, we need quote only a portion of the juvenile officer's evaluation at the hearing and his recommendation:

"EVALUATION OF PROBLEM

"It seems quite obvious from both personal observation and the reports from several psychiatrists who have treated this boy that he is an emotionally disturbed young man. [The juvenile] for some years has exhibited anti-social behavior and emotional problems which have been dealt with by hospitalization in different institutions and also out-patient treatment with different psychiatrists. It seems that thus far no one has really discovered the key to helping [the juvenile] with his present personality and emotional problems. The last placement at Salome, Ariz., in the Circle S Ranch, has been very traumatic for the subject and he solves his dislike for this place by running away. However, currently he has begun to be involved in the serious offense of stealing a car on his last runaway. This gives this officer the feeling that the subject is in need of a more intensive structured environment where he can continue to get psychiatric care over an extended period of time and still have the community protected from his impulsive acting out.

"Since the subject has been in detention this last time his attitude has improved considerably and his cooperation also. He definitely verbalizes a desire to get help and states that he will henceforth cooperate with the program set up by the Court. Dr. Harkins of the Board of Directors of State Institutions for Juveniles has been consulted at length about this case. He has interviewed the parents of the subject personally. At the present time attempts are being made to secure a placement for the subject at the Devereaux School in Texas which, in the opinion of Dr. Harkins, has a program which could be very beneficial to the subject. As of this date we are still waiting for word of acceptance from the Devereaux School.

"TREATMENT PLAN

"1) Commitment to the Board of Directors of State Institutions for Juveniles for placement in a suitable residential treatment center.

"2) Recommendation to the State Board for placement in the Devereaux School in Texas.

"3) That the subject remain in custody until such placement can be arranged.

"It is respectfully recommended that [the juvenile] be committed to the Board of Directors of State Institutions for Juveniles for placement in a suitable institution.

"It is further respectfully recommended that [the] parents pay $300 per month to the Board of Directors of State Institutions for Juveniles toward the care and maintenance of their son in such placement.

"It is also respectfully recommended that the petition in this cause be dismissed and the file retained to 5–26–69."

At that hearing the court made the following finding and order:

"IT IS THE FINDING OF THE COURT, based on the admission of the minor concerning the facts of the petition, that he is in need of the care and protection of the Court.

"IT IS ORDERED, based on the recommendation, that he, [the juvenile] be committed to the Board of Directors of State Institutions for Juveniles for placement in a suitable institution.

"IT IS FURTHER ORDERED that the parents pay to the State Board of Directors for Juveniles for their son's care and maintenance while in a suitable institution the sum of $300 per month.

**440**

"IT IS FURTHER ORDERED that the petition in this cause be dismissed and the file retained to May 26, 1969."

After the commitment, attempt was made by the Board to place the child in the Devereaux School in Texas but that institution was unable to accept him. He was then placed in the Ingleside Psychiatric Hospital in California. The petitioners were asked to sign the following agreement at the time of placement:

"This will certify that we, [the] parents of [the juvenile] who is a ward of the State of Arizona in need of psychiatric treatment and has been committed to the Board of Directors of State Institutions for Juveniles for placement in a suitable institution hereby agree to pay all costs of such treatment plus transportation to and from the Ingleside Psychiatric Hospital at South San Gabriel, California.

"It is understood that this ward will remain until the Hospital authorities recommend in writing to the Board of Directors of State Institutions for Juveniles that he is ready for release. This agreement is in full force and effect from the date of placement until June 30, 1967. It is estimated that these expenditures will total between $500 and $600 per month.

"The Ingelside (sic) Psychiatric Hospital hereby agrees to provide the services requested as outlined above and will bill the parents once a month for the services agreed upon."

The child remained in Ingleside for over six months, the petitioners (parents) paying all the bills. Thereafter he was released to his parents. In the interim the child received counseling services from several sources, including the high school in which he had been placed. He continued the same irregular pattern of behavior and was given psychiatric care. The boy also spent a period of time in the Maricopa County Juvenile Detention Home. On January 18, 1968 the Board, without consulting the Juvenile Court or bringing the child before the Court, placed him in the Arizona State Industrial School at Ft. Grant. This was done on the recommendation of the parole officer and with the consent of the parents. After thirteen months at Ft. Grant he was released to his parents on conditional home placement. Thereafter the proceedings which give rise to the instant action were had.

■ On July 23, 1969 an order was issued out of the Juvenile Court to the parents to show cause why they had failed to pay accumulated arrearages due the Arizona State Department of Corrections for the child's care while in both the Maricopa County Juvenile Detention Home and the Industrial School. In response to the order, the parents contended that the recommendation to the court was that their son was an emotionally disturbed child and should be committed to the Board for placement in a suitable residential treatment center because of his need for psychiatric care. They argued that the order committing him to the Board "for placement in a suitable institution" and requiring the parents to pay $300 toward his care meant an institution as intended by the casework before the judge and consistent with the probation officer's report. The report is explicit in stating that the child was "in need of a more intensive and structured environment where he can continue to get psychiatric care over an extended period of time and still have the community protected from his impulsive acting out." It is abundantly clear that it was the intent of the commitment order to place the boy in an institution which would provide psychiatric care, not an institution such as the Industrial School. The petitioners contend that the action of the Board in committing him to the Industrial School was in contravention of law, that the $300 per month payment has no application, and that therefore the court exceeded its jurisdiction in basing a judgment thereon. We agree.

The Legislature has conferred authority upon the Juvenile Court to order parents

to contribute to a child's support and also to pay a part or all of the expenses of necessary medical treatment of a child upon whom a petition is filed. A.R.S. §§ 8–231,–235. We must, therefore, look to the order to determine what the court in fact required in the action at bar.

The powers of the Juvenile Court with regard to commitment of a juvenile offender are delineated in A.R.S. § 8–231. At the time of the commitment order with which we are here concerned, that statute provided in part:

"A. The judge shall make such order for the commitment, custody and care of the child as the child's welfare and interests of the state require. He may commit the child:

\* \* \* \* \* \*

"3. To a suitable institution.

\* \* \* \* \* \*

"6. To an appropriate public or private agency authorized to care for children.

\* \* \* \* \* \*

"8. To the state industrial school."

The Juvenile Court on January 16, 1967 ordered the child committed to the Board for placement in a suitable institution. The court committed the child under the authority of paragraph 3, not paragraph 8 of A.R.S. § 8–231, subsec. A (since amended). The court further ordered that the parents pay toward their son's care and maintenance while in this "suitable institution." The court did not order that the parents pay toward their son's care while he was detained at the Maricopa County Juvenile Detention Home or while he was detained at the State Industrial School at Ft. Grant.

It is evident from the record that the court, in its commitment order, had as its objective that type of institution which would meet the particular needs of the child, needs evidenced by the casework and recommendation of the probation officer.

We consider next whether the Board, without first going to the Juvenile Court, could legally bind the parents to contribute to the support of the child during his commitment at the Industrial School by deciding that, under A.R.S. § 8–231, subsec. A, par. 3, Ft. Grant was a "suitable institution", thereupon having the child transferred to that facility.

In Gault v. Board of Directors of State Institutions for Juveniles, 103 Ariz. 397, 442 P.2d 844 (1968), this Court held that a Juvenile Court order of commitment, which recited that the juvenile was committed to the Board for placement at the Arizona Youth Center, had the effect of committing the youth therein involved to that institution and not to the Industrial School. In the case at bar, the court order of January 16, 1967 stated that the juvenile was "committed to the Board", but the order was qualified by the phrase "for placement in a suitable institution", using the exact language of A.R.S. § 8–231, subsec. A, par. 3. The inclusion of that phrase had the effect of committing the youth to such an institution and not to the Industrial School or the Juvenile Detention Home. Smith v. Cook, 105 Ariz. 390, 465 P.2d 370 (filed February 18, 1970); Gault v. Board of Directors of State Institutions for Juveniles, supra; In re Santa Cruz, 8 Ariz. App. 349, 446 P.2d 253 (1968); Ginn v. Superior Court, 3 Ariz.App. 240, 413 P.2d 571 (1966). Just as in Gault, supra, when the court in the instant case ordered the juvenile committed to the Board for placement in a "suitable institution", A.R.S. § 8–231, subsec. A, par. 3, and then when the Board instead had the child placed in the Industrial School, A.R.S. § 8–231, subsec. A, par. 8, it acted without authority. That portion of the order requiring the parents to contribute $300 per month "for their son's care and maintenance while in a suitable institution" cannot be held to apply as well to an unauthorized placement by the Board. Thus in the action at bar, the Board was without authority to bind the parents.

The Board had no authority to change the place of commitment of the child and charge the parents for support of the child

until such time as he was returned to the Juvenile Court for such proceedings as were proper and necessary. The child not having been returned to the Juvenile Court, and there not having been a valid order requiring the parents to pay, the judgment is a nullity. The order and judgment of the trial court is vacated.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and McFARLAND and UDALL, JJ., concur.

NOTE: Justice JACK D. H. HAYS having requested that he be relieved from consideration of this matter, Judge FRANCIS J. DONOFRIO of the Court of Appeals was called to sit in his stead.